## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| ITI HOLDINGS, INC., | ) | |
| | ) | |
|     *Plaintiff,* | ) | |
| | ) | |
| v. | ) | *Docket No. 05-184-P-S* |
| | ) | |
| PROFESSIONAL SCUBA | ) | |
| ASSOCIATION, INC., et al., | ) | |
| | ) | |
|     *Defendants* | ) | |

### *RECOMMENDED DECISION ON MOTIONS TO DISMISS, FOR A MORE DEFINITE STATEMENT AND TO TRANSFER*

The defendants, Professional Scuba Association, Inc., Professional Scuba Association International, LLC, Hal Watts, Janice Watts, Joseph Odom, Michael Ange, Tools for Diving Education, Inc., David Crockford and Joseph Keiser, move to dismiss this case on the grounds of lack of personal jurisdiction and failure to state a claim on which relief may be granted. Defendants' Motion to Dismiss, etc. ("Defendants' Motion") (Docket No. 19) at 1. In the alternative, they seek an order requiring the plaintiff to state certain of its claims more definitely. *Id*. The plaintiff has filed a motion to transfer and a memorandum which, although styled as a memorandum in support of its transfer motion, also includes its opposition to the defendants' motion. Plaintiff's Memorandum of Law in Support of Its Motion to Transfer ("Plaintiff's Motion") (included in Motion to Transfer, Docket No. 23) and Argument, Section A ("Plaintiff's Opposition") (included in Plaintiff's Motion at

1

pp. 6-15).[1] I recommend that the court grant the motion to dismiss on jurisdictional grounds as to some of the defendants and on the merits as to the remaining defendants.

## I. Motion to Dismiss for Lack of Personal Jurisdiction

### A. Applicable Legal Standard

A motion alleging lack of personal jurisdiction is governed by Fed. R. Civ. P. 12(b)(2). Such a motion raises the question whether a defendant has "purposefully established minimum contacts in the forum State." *Hancock v. Delta Air Lines, Inc.*, 793 F. Supp. 366, 367 (D. Me. 1992) (citation and internal quotation marks omitted). The plaintiff bears the burden of establishing jurisdiction; however, where (as here) the court rules on a Rule 12(b)(2) motion without holding an evidentiary hearing, a *prima facie* showing suffices. *Archibald v. Archibald*, 826 F. Supp. 26, 28 (D. Me. 1993). Such a showing requires more than mere reference to unsupported allegations in the plaintiff's pleadings. *Boit v. Gar-Tec Prods., Inc.* 967 F.2d 671, 675 (1st Cir. 1992). However, for purposes of considering a Rule 12(b)(2) motion the court will accept properly supported proffers of evidence as true. *Id*.

Because this is a diversity case, the court's authority to exercise personal jurisdiction over a non-resident defendant is limited by the State of Maine's long-arm statute. *See American Express Int'l, Inc. v. Mendez-Capellan*, 889 F.2d 1175, 1178 (1st Cir. 1989). As Maine's long-arm statute permits the exercise of jurisdiction over non-resident defendants to the "fullest extent permitted by the

---

[1] The plaintiff submitted no response to the defendants' motions to dismiss for failure to state a claim or for a more definite statement beyond a footnote which states in its entirety: "The defendants also have moved to dismiss the complaint for failure to state a claim upon which relief can be granted, or, alternatively, for a more definitive statement. ITI has not responded to this motion because it intends to file an amended complaint as a matter of right, and the court's determination of ITI's motion to transfer will determine whether Florida or Maine law applies going forward." Plaintiff's Opposition at 6 n.4. Contrary to the plaintiff's assertions, the filing of an answer by the defendants (Docket No. 26) subsequent to the filing of the motion to dismiss does not "render[] the defendants' motion to dismiss on the merits moot." Plaintiff's Reply Memorandum in Support of Its Motion to Transfer ("Plaintiff's Reply") (Docket No. 30) at 2. Nor can the plaintiff avoid the fact that its failure to respond to two of the three arguments advanced by the defendants in the motion to dismiss constitutes a waiver of its right to oppose those motions simply by stating that it intends to file an amended complaint. *Id.* at 3. *See* Local Rule 7(b).

due process clause of the United States Constitution, 14th Amendment," 14 M.R.S.A. § 704-A(1), the inquiry focuses on whether the assumption of jurisdiction would violate due process.

Due process requires that each defendant have "minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and internal quotation marks omitted). Minimum contacts are determined by whether the defendant "purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

To establish personal jurisdiction over a non-resident defendant, the plaintiff must demonstrate that the defendant is subject either to "general" jurisdiction or "specific" jurisdiction. "[A] defendant who has maintained a continuous and systematic linkage with the forum state brings himself within the general jurisdiction of that state's courts in respect to all matters, even those that are unrelated to the defendant's contacts with the forum." *Phillips Exeter Acad. v. Howard Phillips Fund, Inc*., 196 F.3d 284, 288 (1st Cir. 1999) (citations omitted). Absent general jurisdiction, this court may still assume jurisdiction if the claim "relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum." *Id*.

The Maine Law Court has determined that

> before exercising its jurisdiction over an out-of-state defendant, the court must conclude that (1) Maine has a legitimate interest in the subject matter of this actions; (2) the defendant, by its conduct, should reasonably have anticipated litigation in Maine; and (3) exercise of jurisdiction by Maine's courts would comport with traditional notions of fair play and substantial justice.

*Frazier v. BankAmerica Int'l*, 593 A.2d 661. 662 (Me. 1991). Once the plaintiff demonstrates that Maine has a legitimate interest in the controversy and that the requisite minimum contacts exist such

3

that the defendant should reasonably expect litigation in this state, the burden shifts to the defendant to prove that the exercise of jurisdiction would not comport with fair play and substantial justice.

### B.  Factual Background

The plaintiff has submitted evidence to support the following relevant facts that appear in the complaint.  That evidence is the affidavit of Brian Carney, which is Exhibit 1 to its motion to transfer. Declaration of Brian Carney ("Carney Decl.") (Exh. 1 to Plaintiff's Motion to Transfer) ¶¶ 3-4, 11-20.  For ease of reference, I will cite only the relevant paragraphs of the complaint.

According to the complaint, which alleges tortious interference with contractual relations, civil conspiracy,[2] fraud, breach of contract, misappropriation of trade secrets, copyright infringement, trademark infringement, trade dress infringement and unfair competition, Complaint (Docket No. 1) at 22-56, defendants Professional Scuba Association, Inc. ("PSA") and Professional Scuba Association International, LLC ("PSAI") are Florida corporations with a principal place of business in Ocala, Florida; defendants Hal Watts, Janice Watts and Joseph Odom are residents of Ocala, Florida; defendant David Crockford is a resident of Cornwall in the United Kingdom; defendant Joseph Keiser is a resident of Singapore, Malaysia; defendant Michael Ange is a resident of New Port Richey, Florida; and defendant Tools for Diving Education, Inc. ("TDE") is a North Carolina company with a principal place of business in Dunn, North Carolina, *id.* ¶¶ 2-10.  The plaintiff is a Maine corporation with its corporate office in Topsham, Maine.  *Id.* ¶ 1.  It provides certification, training materials and supporting documentation to the recreational, technical and public safety scuba diving markets.  *Id.*

Defendant PSA, which was founded by defendant Hal Watts, is a regional, specialized dive training company that has focused on teaching extended range, deep air diving.  *Id.* ¶ 19.  Defendants Odom, Ange, Crockford and Keiser have signed written agreements with the plaintiff in which they

---

[2] Maine law does not recognize a separate cause of action for civil conspiracy.  *Forbis v. City of Portland*, 270 F.Supp.2d 57, 61 (*continued on next page*)

agreed to promote the plaintiff's interests and maintain the confidentiality of its proprietary information. *Id*. ¶ 23. Odom and Ange also agreed to provide training materials they had written for use under various brand names owned by the plaintiff. *Id*.

Defendants Hal Watts, Janice Watts, Odom, Ange, Crockford and Keiser met between October 13 and 16, 2004 in Houston, Texas to discuss the implementation of a conspiracy against the plaintiff and to enlist others to join. *Id*. ¶ 32. Odom signed a publishing contract with the plaintiff in 2001. *Id*. ¶ 38. On October 27, 2004 Odom resigned as director of training for the plaintiff and four days later became president of PSA. *Id*. ¶¶ 40-41. Two-thirds of the training courses offered by PSA since Odom became its president are the same as eight of the nine course manuals that Odom provided exclusively to the plaintiff. *Id*. ¶ 49.

On December 27, 2004 Ange resigned his position on the plaintiff's training board. *Id*. ¶ 51. On January 30, 2005 PSA announced that Ange would become its vice-president for the Americas. *Id*. ¶ 52. Ange had four publishing agreements with the plaintiff covering four training manuals. *Id*. ¶ 53. The agreements state that Ange assigns all rights in these works to the plaintiff and agrees not to compete with the plaintiff by publishing any edition, adaptation or derivative of the manuals and gives the plaintiff the right of first refusal on any future book-length works designed for use by a diver training agency. *Id*. ¶ 54.

Crockford is the former head of the plaintiff's operations in Europe. *Id*. ¶ 59. On February 22, 2004 he signed an agreement with the plaintiff that contained non-compete, non-solicitation and confidentiality provisions. *Id*. ¶ 60. In October 2004 Crockford induced the plaintiff to sign a new, less restrictive agreement. *Id*. ¶ 63. He joined PSA as its vice-president and general manager of European operations shortly after Ange. *Id*. ¶¶ 58, 69.

---

(D. Me. 2003).

5

On February 19, 2004 Keiser signed a written agreement with the plaintiff that contained non-compete, non-solicitation and confidentiality provisions. *Id.* ¶ 74. In October 2004 he induced the plaintiff to sign a new, less restrictive agreement. *Id.* ¶ 77. In late March 2005 Keiser terminated his relationship with the plaintiff and because vice-president of PSA for Asia and the Pacific Rim. *Id.* ¶ 80.

PSA and PSAI have published copyrighted materials of the plaintiff as their own; imitated the trade dress of the plaintiff's products; sold the plaintiff's products as their own; and manufactured, sold and distributed products bearing the PSAI logo along with the plaintiff's trademarks and copyright notices. *Id.* ¶ 94.

## C. Discussion

The plaintiff contends that there is sufficient evidence to support this court's exercise of both general and specific personal jurisdiction over each of the defendants. Plaintiff's Opposition at 11. It does not address each defendant individually in its argument, but the court's jurisdiction over each defendant must be considered separately. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129-30 (9th Cir. 2003).

*1. Professional Scuba Association, Inc.* The plaintiff asserts that "general personal jurisdiction exists over the defendants because . . . all of the defendant[s] have nevertheless engaged in continuous and systematic activity, unrelated to this lawsuit, with ITI in Maine." *Id.* Citing Carney's affidavit, the plaintiff asserts that "all of the defendants have either purchased products from ITI, such [as] training materials and certifications, or they have sold training manuals that they authored to ITI in Maine." *Id.* However, the cited paragraph of Carney's affidavit makes this assertion only as to "the individual defendants." Carney Decl. ¶ 22. Even if this term could reasonably be read to mean all of the defendants, rather than the more likely inference that it refers to only the human defendants, there

are no specific allegations in the declaration or in the complaint that any of the corporate defendants sold training manuals to the plaintiff. The complaint does not allege that any of the corporate defendants did so, and the language in Carney's affidavit is the equivalent of unsupported allegations in a complaint on this point. This "evidence" is insufficient to be considered with respect to the exercise of general jurisdiction over PSA.

The plaintiff next asserts in this regard that "[t]he defendants have sent correspondence and e-mails to ITI and through its servers in Maine; placed numerous phone calls to ITI in Maine; sent certifications to Maine for processing; and they have admittedly traveled to Maine to conduct business with or on behalf of ITI." Plaintiff's Opposition at 11. The wording of the paragraph of Carney's affidavit cited in support of this assertion is identical. Carney Decl. ¶ 22. Corporations can do these things only through their human agents or employees, who must at a minimum be identified in order for their actions to be imputed to the corporation. The assertion, as it is stated, is not evidence that can support the exercise of general jurisdiction over PSA.

The plaintiff next contends that "all of the defendants committed intentional, tortious conduct that was expressly aimed at ITI in Maine," followed with a list of specific acts. Plaintiff's Opposition at 11-12. Setting aside the fact that such "expressly aimed" contacts are the subject matter of specific rather than general personal jurisdiction, *Dole Food Co. v. Watts*, 303 F.3d 1104, 1110-111 (9th Cir. 2002) ; *see generally Accessories Ltd. of Maine, Inc. v. Longchamp U.S.A.*, 170 F.Supp.2d 12, 14-15 (D. Me. 2001), only two of the listed acts could possibly be performed by a corporation.[3] Those are selling on-line training directly to Maine residents and targeting their interactive web sites to residents of Maine. Plaintiff's Opposition at 12. Only one of the paragraphs of Carney's affidavit cited in

---

[3] A corporation itself cannot "ma[ke] numerous business trips . . . , ma[k]e false statements . . ., sen[d] e-mail solicitations . . . , violate[] several contracts . . . , [or] attempt[] to divert monies . . . ." Plaintiff's Opposition at 12. Some identifiable and identified human actor must be involved.

7

support of this assertion relates to these alleged acts. Carney Decl. ¶ 24. That paragraph asserts in its entirety that

> [a]fter this lawsuit was filed, ITI learned that PSA and PSAI recently established interactive web sites, www.psai.com and www.psai-training.com, that deliver[] on-line scuba instruction to residents of Maine. *See* Exhibit C. In fact, one of ITI's employees in ITI's Maine offices successfully registered and paid for on-line instruction from PSA/PSAI by following the instructions on its interactive web sites.

*Id*. The mere existence of an interactive web site and one contact with a Maine resident through that web site is not sufficient to establish either general or specific personal jurisdiction. *See Talarico v. Marathon Shoe Co.*, 2001 WL 366346 (D. Me. Apr. 12, 2001), at *5 (citing *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999)); *see also Maritz, Inc. v. CyberGold, Inc.*, 947 F. Supp. 1328, 1333 n.4 (E.D. Mo. 1996) (disregarding 180 occasions on which plaintiff had accessed defendant's web site, noting that "[i]f such contacts were to be considered, a plaintiff could always try to create personal jurisdiction"). In addition, it is impossible to tell from the plaintiff's submissions *when* the web sites were created. The creation of such a web site after the complaint in an action was filed may not be considered in determining whether general personal jurisdiction exists. *Noonan v. Winston Co.*, 135 F.3d 85, 94-95 (1st Cir. 1998). The plaintiff has not established that this court has general personal jurisdiction over PSA.

Analysis of general personal jurisdiction is "considerably more stringent than that applied to specific jurisdiction questions," *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 619 (1st Cir. 2001) (citation omitted), but the plaintiff provides no discussion of specific jurisdiction separate from its general jurisdictional analysis. Plaintiff's Opposition at 9-15. The plaintiff asserts that "PSA/PSAI already has at least one instructor teaching in the State of Maine." *Id*. at 12. This assertion is clearly related to one or more of the counts in the complaint and may therefore be considered as evidence of specific personal jurisdiction. The paragraph of Carney's affidavit cited in

8

support of this assertion states that Carney "know[s] of at least one current PSA instructor who resides in Maine . . . ." Carney Decl. ¶ 23. This does not establish that this individual is teaching in Maine. The fact that one of PSA or PSAI's instructors currently lives in Maine is insufficient to establish specific personal jurisdiction. One the showing made, this court does not have personal jurisdiction over PSA.

*2. Professional Scuba Association International and Tools for Diving Education, Inc.* The plaintiff presents no more evidence on the jurisdictional question for PSAI than it did for PSA and even less for TDE. For the same reasons, therefore, this court does not have personal jurisdiction over PSAI or TDE.

*3. Hal Watts.* The plaintiff contends that Watts is subject to this court's general and specific personal jurisdiction because he "either purchased products from ITI . . . or . . . sold training materials that [he] authored to ITI in Maine;" "sent correspondence and e-mails to ITI and through its servers in Maine; placed numerous phone calls to ITI in Maine; sent certifications to Maine for processing; and . . . admittedly traveled to Maine to conduct business with or on behalf of ITI." Plaintiff's Opposition at 11. The paragraph of Carney's affidavit that is the only authority cited for this assertion uses identical language. Carney Decl. ¶ 22. It is impossible to discern from this statement whether Hal Watts is in fact one of the "defendants" to whom this sentence refers. The only likely conclusion is that he is not, because later in the same paragraph Carney identifies Ange, Odom, Crockford and Keiser as the defendants with whom he has spoken "hundreds of times" and who used "ITI's private e-mail server in Maine to communicate with . . . Hal Watts . . . ." *Id*. This information may not be used to establish personal jurisdiction over Hal Watts.

The plaintiff next asserts that "all of the defendants committed intentional, tortious conduct that was expressly aimed at ITI in Maine," again without making it clear who "all of the defendants" are. Opposition at 11. According to the plaintiff, "they"

> have made numerous business trips to Maine, they have made false statements to Maine residents about the future viability of ITI, they have sent e-mail solicitations through ITI's computer servers in Maine, they have violated several contracts that govern their business relationship with ITI in Maine, they have attempted to divert monies that were bound for Maine, they sell on-line training directly to Maine residents, and they target their interactive web sites to residents of Maine.

*Id*. at 12.[4]  Hal Watts states that he has never traveled to Maine "for any business purpose," and only once approximately ten years ago to attend a wedding.   Declaration of Hal Watts (Exh. 2 to Defendants' Motion) ¶¶ 15-16.  He once sent out an e-mail through ITI's server by mistake.  *Id*. ¶¶ 18-22.  He was certified to teach courses through ITI, but resigned "as a result of the lawsuit."  *Id*. ¶¶ 9-11.  He has never maintained any contractual relationship with ITI.  *Id*. ¶ 11.  This undisputed, specific information makes clear that the plaintiff has not met its burden to demonstrate the existence in this court of general or specific personal jurisdiction over Hal Watts.

*4. Janice Watts*.  The plaintiff cites no more specific information about Janice Watts than it does about Hal Watts.  Plaintiff's Opposition at 11-12.  She states that she has "never maintained any relationship with Plaintiff[] beyond certifications to teach TDI/SDI courses," which she taught in Florida; that she has resigned as a TDI/SDI instructor; that she has never lived in or visited Maine, or conducted business with any Maine entity; and that she mistakenly sent one e-mail through the plaintiff's server.  Declaration of Janice Watts (Exh. 3 to Defendants' Motion) ¶¶ 4-13.  As was the

---

[4] The plaintiff cites 47 paragraphs of its complaint in support of these assertions. Plaintiff's Opposition at 12. As I have already noted, *supra* at 2, demonstration of the existence of personal jurisdiction requires more than mere reference to otherwise unsupported allegations in the plaintiff's pleadings. *Boit*, 967 F.2d at 671.

10

case with Hal Watts, the plaintiff has failed to demonstrate that this court has general or specific personal jurisdiction over Janice Watts.

*5. Michael Ange*. The general allegations about "all of the defendants" asserted by the plaintiff set forth above may possibly apply to defendant Ange and are equally as ineffective to carry its burden with respect to him as they were for Hal and Janice Watts. The plaintiff does make specific allegations about Ange, however.[5] It contends that Ange was "in almost daily contact with ITI's office by telephone, fax and e-mail for a period of several years" and "used ITI's private e-mail server in Maine" to communicate with defendants Odom, Crockford, Keiser and both Hal and Janice Watts. Plaintiff's Opposition at 11. The specific paragraphs of Carney's affidavit cited in support of these assertions by the plaintiff provide that he has "spoken to Ange . . . hundreds of times," but not where or when. Carney Decl. ¶ 22. He fares better with his assertion that Ange was "in almost daily contact with ITI's office . . . for a period of several years." *Id*. The plaintiff also relies on documents attached to Ange's affidavit. Plaintiff's Opposition at 5.

Those documents are four "publishing agreements" concerning manuals and guides written by Ange. Declaration of Michael Ange (Exh. 13 to Defendant's Motion), Exhs. 1-A to 1-D. Contrary to Ange's assertion that "[t]hose contracts referenced Pasco County, Florida as the proper forum for resolving legal disputes," Ange Decl. ¶ 11, each of the agreements states that the parties agree that "any dispute arising out of or relating to this Agreement" "shall be adjudicated by arbitration or litigation in the State of Maine and to submit to the jurisdiction and venue thereof." Publishing Agreement [re Diving Leadership Instructor Guide], Exh. 1-A to Ange Decl., ¶ 41; Publishing Agreement [re Diving Leadership Student Manual], Exh. 1-B to Ange. Decl., ¶ 41; Publishing

---

[5] The plaintiff also relies on an e-mail sent "using ITI's proprietary e-mail address list" on December 4, 2005, Plaintiff's Opposition at 11, well after the complaint was filed. As I have already stated, events that occur after the filing of the complaint may not be used to establish the court's jurisdiction over a named defendant.

11

Agreement [re Advanced Wreck Instructor Guide], Exh. 1-C to Ange Decl., ¶ 41; Publishing Agreement [re Advanced Wreck Student Manual], Exh. 1-D to Ange Decl., ¶ 41. Some of the plaintiff's claims arise out of or are related to these agreements. Complaint ¶¶ 53-56, 199-209. The plaintiff has submitted sufficient evidence to establish this court's specific personal jurisdiction over Ange, at least to the extent that its claims arise from those agreements.

*6. David Crockford.* The plaintiff makes essentially the same specific factual allegations about Crockford as those discussed above with respect to Ange. Plaintiff's Opposition at 4-6, 11-12. In Crockford's case, there are two written agreements out of which at least some of the plaintiff's claims arise or to which they are related. Complaint ¶¶ 23, 60-63, 72, 158-74, 210-25. In both of these agreements Crockford "expressly consent[ed] to the personal jurisdiction of the state and federal courts located in Maine for any lawsuit filed there against me by the [plaintiff] arising from or relating to this Proprietary Information Agreement." ITI Holdings, Inc. Non-Compete, Non-Solicitation & Confidentiality Agreement (Exh. 1 to Declaration of David Crockford ("Crockford Decl.") (Exh. 10 to Defendants' Motion)) ¶ 8(b); ITI Holdings, Inc. Non-Compete, Non-Solicitation & Confidentiality Agreement (Exh. 2 to Crockford Decl.) ¶ 8(b). The plaintiff has provided sufficient information to allow this court to exercise personal jurisdiction over Crockford, at least to the extent that its claims arise from the two written agreements.

*7. Joseph Odom.* The plaintiff also makes the same specific allegations about Odom as those discussed above with respect to Ange and Crockford. Plaintiff's Opposition at 4-6, 11-12. Some of the allegations in the complaint appear to arise out of or relate to the first of two written agreements attached to Odom's affidavit.[6] Complaint ¶¶ 23, 38-44, 49, 187-98. That document is a publishing

---

[6] The second document consists of a letter and a document entitled "Assignment," neither of which includes provisions which the complaint alleges to have been violated, although the "Assignment" refers to a "Schedule A" which is not attached. Exh. 2 to Declaration of Joseph Odom ("Odom Decl.") (Exh. 4 to Defendants' Motion).

agreement which, contrary to the suggestion of the plaintiff, Plaintiff's Opposition at 4, 6, does not include a choice-of-venue provision. Publishing Agreement, Exh. 1 to Odom Decl. The agreements thus provide no support for the plaintiff's arguments concerning this court's personal jurisdiction over Odom, beyond the fact that the first agreement does provide that Maine law will apply to construction of the agreement. *Id*. at 6. While the question is close, I conclude that the plaintiff has submitted sufficient evidence of Odom's contacts with ITI and Maine to satisfy the requirements for the exercise of this court's personal jurisdiction over him. Contrary to the defendants' assertions, Defendants' Motion at 25, Odom's specific contacts with Maine and with ITI as set forth in Carney's affidavit, are related to the tort- and contract-based claims asserted against him in the complaint. The defendants make no argument with respect to any other elements of the test for the existence of personal jurisdiction with respect to Odom.

*8. Joseph Keiser.* Again, the plaintiff makes the same specific factual allegations about Keiser as it did about Ange, Crockford and Odom for purposes of the discussion of personal jurisdiction. Attached to Keiser's affidavit are two agreements that appear to give rise to or relate to some of the claims raised against him in the complaint. Complaint ¶¶ 23, 74-78, 93, 175-86, 226-38. Each of these agreements includes the same consent to personal jurisdictions of the state and federal courts in Maine as did the agreements signed by Crockford. ITI Holdings, Inc. Non-Compete, Non-Solicitation & Confidentiality Agreement (Exh. 1 to Declaration of Joseph Keiser ("Keiser Decl.") (Exh. 7 to Defendants' Motion)) ¶ 8(b); ITI Holdings, Inc. Non-Compete, Non-Solicitation & Confidentiality Agreement (Exh. 2 to Keiser Decl.) ¶ 8(b). As was the case with Crockford, the plaintiff has submitted sufficient evidence to allow this court to exercise personal jurisdiction over Keiser, at least to the extent that its claims against him arise out of or relate to the two written agreements.

For the foregoing reasons, I recommend that the motion to dismiss for lack of personal jurisdiction be **GRANTED** as to defendants PSA, PSAI, Hal Watts, Janice Watts and TDE and otherwise **DENIED**.

### II.  Motion to Dismiss for Failure to State a Claim

The defendants have also moved to dismiss the claims against them for failure to state a claim upon which relief may be granted.

### A.  Applicable Legal Standard

Motions to dismiss for failure to state a claim on which relief may be granted invoke Fed. R. Civ. P. 12(b)(6). "[I]n ruling on a motion to dismiss [under Rule 12(b)(6)], a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). The defendants are entitled to dismissal for failure to state a claim only if "it appears to a certainty that the plaintiff[s] would not be unable to recover under any set of facts." *State St. Bank & Trust Co. v. Denman Tire Corp.*, 240 F.3d 83, 87 (1st Cir. 2001); *see also Wall v. Dion*, 257 F. Supp.2d 316, 318 (D. Me. 2003).

### B.  Discussion

As I have noted above, the plaintiff has not filed any opposition to the defendants' motion to dismiss on this ground, even after being alerted to the danger of such a course by the defendants' reply memorandum of law. Defendants' Reply in Support of Their Motion to Dismiss (Docket No. 27) at 1-3. This court has repeatedly granted motions to dismiss when the plaintiff files no opposition. *See, e.g., Andrews v. American Red Cross Blood Servs.*, 251 F.Supp.2d 976, 978-79 (D. Me. 2003); *Cardente v. Fleet Bank of Maine, Inc.*, 796 F. Supp. 603, 606 (D. Me. 1992). The First Circuit has

upheld this practice.  *E.g., NEPSK, Inc. v. Town of Houlton*, 283 F.3d 1, 7 (1st Cir. 2002).  I see no reason to deviate from that practice in this case.

Accordingly, I recommend that the motion to dismiss for failure to state a claim on which relief may be granted be **GRANTED** as to Ange, Crockford, Odom and Keiser, the remaining defendants.

### III. Motion for a More Definite Statement and to Transfer

My recommendation that the motion to dismiss be granted renders moot the defendants' alternative motion for a more definite statement and the plaintiff's motion to transfer.

### IV. Conclusion

For the foregoing reasons, I recommend that the defendants' motion to dismiss be **GRANTED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 31st day of January, 2006.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge